THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:08-CV-458-DAN

| | |
|---|---|
| SUNTRUST BANK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| MARK E. DOWDY, TONI B. DOWDY, ) | |
| DAVID DENNIS CYRUS and ) | |
| STARLETTE W. CYRUS, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on Plaintiff's Motion for Judgment on the Pleadings [DE-40] pursuant Rule 12(c) of the Federal Rules of Civil Procedure and Defendants' Motion for Leave to Amend Answers and Counterclaim. [DE-50.] All briefing, responses and replies are complete. Accordingly, the motions are ripe for ruling.

## I. STATEMENT OF THE CASE

Plaintiff, SunTrust Bank ("SunTrust"), initiated this diversity action by Complaint filed on September 11, 2008 [DE-1], seeking to recover on personal guaranties executed by each Defendant. On November 10, 2008, each Defendant filed a separate answer, generally denying the allegations of the complaint, raising several affirmative defenses, and alleging counterclaims for wrongful refusal to fund loan agreements and for unfair or deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1. [DE-13-16.] Defendants Toni B. Dowdy and Starlette W. Cyrus also asserted counterclaims for violation of the Equal Credit Opportunity Act (the "ECOA"), 15 U.S.C. § 1691 *et seq.*, and Regulation B, 12 C.F.R. § 202.1, issued pursuant to the ECOA by the Federal Reserve Board. [DE-13 & 15.] On December 1, 2008, SunTrust filed answers to each Defendant's

counterclaims. [DE-19-22.] The parties, thereafter, attempted to resolve the matters at issue in this suit and related matters pending in the United States Bankruptcy Court for the Eastern District of North Carolina. Multiple joint requests to extend the deadline for filing a discovery plan were sought and granted. [DE- 24-25, 27-34 & 36-39.] On February 17, 2010, SunTrust filed a motion for judgment on the pleadings [DE-40], seeking dismissal of all counterclaims, to which Defendants responded [DE-45] and SunTrust replied [DE-47].

A discovery plan was filed jointly by the parties on March 17, 2010 [DE-44], and approved by the court on March 22, 2010 [DE-46], which provided, *inter alia*, that Defendants had until May 5, 2010 to move to amend their pleadings. On May 5, 2010, Defendants filed a Motion for Leave to Amend Answers and Counterclaim [DE-50], to which SunTrust responded [DE-52] and Defendants replied [DE-53].

## II. STATEMENT OF THE FACTS

The facts alleged in Defendants' proposed amended answers and counterclaims, viewed in the light most favorable to Defendants, may be summarized as follows: SunTrust commenced this lawsuit to recover on the personal guaranties executed by each Defendant after defaults on various loans. SunTrust made ninety-three secured loans to five corporate entities (collectively, the "Corporate Borrowers" or "Companies")[1] and one joint secured loan to Defendants Mark E. Dowdy ("Dowdy") and David Dennis Cyrus ("Cyrus"). Defs.' Mem. Supp. Mot. Am. Countercl. ("Defs.' Mem.") at 2 [DE-51]. SunTrust also made an individual secured loan to Cyrus. Defs.' Mem. at 2 [DE-51]. SunTrust made these loans to finance the Corporate Borrowers' real estate development

---

[1] The corporate entities are Marcus Edwards Development, LLC, Den-Mark Construction, Inc., Den-Mark Homes SC, Inc., M&D Development, LLC and Den-Mark Properties, LLC. *See* Compl. ¶¶ 7, 20, 33, 46, 59.

2

activities and in consideration for these loans, each of the Defendants allegedly executed guaranty agreements pursuant to which the Defendants guarantied the repayment of all amounts due thereunder.[2] Defs.' Mot. Am. Countercl. ("Am. Countercl.") ¶¶ 7-11 [DE-50].

SunTrust solicited the business of the Corporate Borrowers, serving as their principal lender. Am. Countercl. ¶¶ 3-4, 10, 45. SunTrust assured the Corporate Borrowers "through the course of conduct" that all loans would be funded as agreed. *Id.* ¶ 45. Notwithstanding "solicitations, assurances, and its course of conduct," in the fall of 2007, SunTrust tightened its lending standards, particularly on real estate development and construction loans, including the extension of credit to the Corporate Borrowers. *Id.* ¶¶ 16-17, 20. In particular, SunTrust refused to fund any requests by the Corporate Borrowers for advances under the existing loan agreements and demanded to be repaid loans outstanding. *Id.* ¶¶ 20, 38. Thereafter, SunTrust "feigned an interest in re-considering" its decision to cease lending to the Corporate Borrowers without any intention of providing additional funding. *Id.* ¶¶ 21, 24. SunTrust used this alleged misrepresentation of its intent to consider additional funding to "procure an additional payment of $300,000, more or less, and to procure execution of [] 'forbearance agreements' by some of the [d]efendants and the [Corporate Borrowers]." *Id.* ¶ 25. SunTrust's actions were the result of its "own business decisions" and not the result of wrongful conduct by the Corporate Borrowers or Defendants. *Id.* ¶ 41. SunTrust's actions forced the Corporate Borrowers to file for bankruptcy. *Id.* ¶ 40.

---

[2] SunTrust's answers to Defendants' counterclaims include, as Exhibit B, copies of the guaranty agreements signed by each Defendant. *See* [DE-19.2] (as to Mark Dowdy); [DE-20.2] (as to Starlette Cyrus); [DE-21.2] (as to Toni Dowdy); [DE-22.2] (as to David Cyrus). Starlette Cyrus and Toni Dowdy deny that SunTrust obtained such guaranties from them. [DE-13 at 9 ¶ 2]; [DE-15 at 8 ¶ 2].

## III. DISCUSSION

A. <u>Motion to Amend</u>

The Court first considers Defendants' motion to amend their answers and counterclaims, which if granted will moot Plaintiff's motion for judgment on the pleadings.

1. Standard of Review

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, a party may amend its pleading with the court's leave and the court should freely give leave when justice so requires. In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court enunciated the following general standard to be employed by the district courts in making Rule 15(a) determinations:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

*Id.* at 182 (quoting Fed. R. Civ. P. 15(a)). Thus, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (emphasis and citation omitted). The decision to deny or grant leave to amend a pleading is within a district court's discretion; however, "a court may not exercise its discretion in a way that undermines the basic policy of Rule 15." *Pittston Co. v. United States*, 199 F.3d 694, 705 (4th Cir. 1999).

2. Discussion

SunTrust contends that allowing Defendants' proposed amendments would be futile, because
4

the amended allegations fail "to state a claim to relief that is plausible on its face." *Ashcorft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The proposed amendments seek to cure deficiencies alleged by SunTrust in its motion for judgment on the pleadings and to state three new causes of action. The Federal Rules provide that leave to amend should be freely given, and the courts have implemented this policy by requiring a finding of bad faith, prejudice, or futility in order to defeat a motion to amend. *Edwards*, 178 F.3d at 242.

"A motion to amend a pleading should only be denied as futile if a proposed amendment advances a claim or defense that is frivolous or legally deficient on its face." *Hillyard Enterp., Inc. v. Warren Oil Co., Inc.*, No. 5:02-cv-329-H, 2003 WL 25904136, at *4 (E.D.N.C. July 3, 2003) (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)). "Unless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations . . . conjecture about the merits of the litigation should not enter into the decision whether to allow amendment." *Davis v. Piper Aircraft Co.*, 615 F.2d 606, 613 (4th Cir. 1980). In *Johnson*, the court concluded that a proposed amendment was not futile where it was "not obvious on the face of the proposed amendment that [the statute on which the claim was premised] does not apply." 785 F.2d at 510.

SunTrust has not alleged bad faith, and the Court find no evidence of bad faith. Additionally, the Court finds that there would be no prejudice to SunTrust as a result of the amendments. This case, as a practical matter, is in the early stages with a new discovery plan having been approved by the Court on September 20, 2010 [DE-64] due to the parties' joint motions to extend time during the pendency of the Corporate Borrowers' bankruptcy proceedings and related settlement discussions. Accordingly, the Court will examine in turn each of SunTrust's futility arguments against allowing

5

Defendants' requested amendments.

    a.  Third Party Beneficiary Counterclaim

Each Defendant asserted an identical claim as a third party beneficiary of the loan agreements between SunTrust and the Corporate Borrowers. Defendants contend that they have incurred in excess of $50,000,000 in damages resulting from SunTrust's breach of the loan agreements. SunTrust contends that Defendants' amended allegations fail to establish that Defendants were third party beneficiaries, because guarantor liability does not, in and of itself, provide Defendants with a third party beneficiary claim.

In order to establish a third party beneficiary contract claim under North Carolina law, the Defendants must show that (1) a contract existed between two other persons, (2) the contract was valid and enforceable, and (3) the contract was entered into for Defendants' direct, not incidental, benefit. *See Hospira Inc. v. Alphagary Corp.*, 671 S.E.2d 7, 13 (N.C. Ct. App. 2009). Generally, guarantors may not recover for injury to a corporation absent showing one of two exceptions:

> [G]uarantors of a corporation's debts ordinarily may not pursue individual actions to recover damages for injuries to the corporation. Individual actions may be prosecuted, however, if the guarantor can show either (1) that the wrongdoer owed him a special duty, or (2) that the injury suffered by the guarantor is personal to him and distinct from the injury sustained by the corporation itself.

*Barger v. McCoy Hillard & Parks*, 488 S.E.2d 215, 221 (N.C. 1997).

SunTrust contends that Defendants failed to allege and cannot show that the contracts were entered into for Defendants' direct benefit. SunTrust is correct that Defendants do not expressly allege that the loan agreements between SunTrust and the Corporate Borrowers were entered into for the Defendants' direct benefit. However, Defendants do allege facts that support both exceptions to the general rule that guarantors may not recover for injury to a corporation. Defendants allege that

6

(1) "Plaintiff owed a special duty to Defendants to fund the loan agreements," (2) "Plaintiff knew, or should have known, in intimate detail Defendants' financial condition and reliance upon the funding of the loans," (3) "It was foreseeable that a blanket breach of Plaintiff's contracts to lend with the Companies would destroy all the companies and trigger defaults under agreements with other lenders and businesses," (4) "It was foreseeable that breach of the loan agreements would cause Defendants to become liable under other agreements with lenders and businesses of which Plaintiff knew or should have known," (5) "Plaintiff breached its loan agreements alleged in Plaintiff's complaint," and (6) "Defendants, as third party beneficiaries of the loan agreements, have incurred damages in excess of $50,000,000.00 as an actual and direct cause of the breach of the loan agreements by the Plaintiff." Defs.' Prop. Am. Answers & Counterclaims [DE-60-63].

The Court finds that Defendants have sufficiently pleaded a third party beneficiary claim under the exceptions described in *Barger*. Defendants alleged that SunTrust owed them a special duty based on their relationship with Defendants and special knowledge of Defendants' financial position and reliance on the funding of the loans to the Corporate Borrowers. Defendants additionally alleged that the injury suffered by them is personal to them and distinct from the injury sustained by the corporation itself. These allegations "cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 570). The Court notes that it is not appropriate to consider the merits of the proposed amended claims at this stage, but only whether or not Defendants have proposed a claim that is "frivolous or legally deficient on its face," *Hillyard Enterp., Inc.*, 2003 WL 25904136, at *4. While the Defendants ultimately may not be able to prove an intended direct benefit, a special duty owed by SunTrust, or personal and distinct damages, the Court will, at this time, allow

7

Defendants to amend their answers to include a third party beneficiary counterclaim.

### b. Guarantor Damages

Defendants each asserted identical counterclaims for fraud and misrepresentation, unfair and deceptive trade practices, and negligence. Defendants alleged, *inter alia*, that after SunTrust announced that it would not provide further funds under the loan agreements, it falsely represented that it would reconsider its position in order to obtain money, forbearance agreements, and other things of value from Defendants. SunTrust argues that Defendants' proposed tort counterclaims each fail because any possible damages would enure to the benefit of the Corporate Borrowers and not to the Defendants as guarantors.

SunTrust relies on *Barger* for the proposition that "[G]uarantors of a corporation's debts ordinarily may not pursue individual actions to recover damages for injuries to the corporation," 488 S.E.2d 215 at 221, and argues that neither *Barger* exception (i.e., special duty or personal and distinct damages) applies in this case. As an initial matter, the Court observes that *Barger* was decided at the summary judgment phase and did not consider whether the claim was frivolous or legally deficient on its face. SunTrust also argues that there is no authority for the proposition that a lender owes a borrower a special duty, citing *Branch Banking & Trust Co. v. Thompson*, 418 S.E.2d 694, 699 (N.C. Ct. App. 1992), another case decided at the summary judgment phase. As noted above, in ruling on a motion to amend, it is not appropriate for the Court to consider such arguments on the merits, but rather whether the Defendants' proposed amendments are futile, i.e., whether they are frivolous or legally deficient on their face.

SunTrust alternatively argues that Defendants' allegation of a special duty is a conclusory allegation unsupported by factual enhancement. However, the Court has already determined that the

8

Defendants alleged sufficient facts in support of both exceptions, including special duty, to the general rule that guarantors may not recover for injury to a corporation. Accordingly, the Court does not find Defendants' tort claims futile based on a failure to properly plead a special duty. Additionally, Defendants allege that, in addition to relief from their guaranty agreements, they are entitled to relief from the forbearance agreements they personally signed and to damages for funds personally advanced by Mr. Dowdy as a result of SunTrust's allegedly tortious conduct. These allegations, while they may ultimately not support a finding of personal and distinct damages, are sufficient to satisfy the plausibility requirement of *Twombly* and to survive a futility challenge.

c. Fraud and Misrepresentation Counterclaims

SunTrust contends that Defendants failed to state a claim for fraud because they did not allege damages or reasonable reliance and did not allege the elements with particularity. In order to establish a claim for fraud under North Carolina law, the Defendants must show "(1) False representation or concealment of a past or existing material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Whisnant v. Carolina Farm Credit*, 693 S.E.2d 149, 156-57 (N.C. Ct. App. 2010). Additionally, "[j]ustifiable reliance is an essential element of both fraud and negligent misrepresentation." *Helms v. Holland*, 478 S.E.2d 513, 517 (N.C. Ct. App. 1996).

i. Damages

SunTrust contends that Defendants cannot show monetary damages as a result of the alleged fraudulent misrepresentation because the loan agreements and guaranties were signed before the alleged fraudulent misrepresentation was made and any funds advanced to the Corporate Borrowers by Defendants based on the alleged fraudulent misrepresentation were in fact preexisting obligations

9

of Defendants under the guaranties. SunTrust further contends that the forbearance agreement has no impact on liability and does not constitute damage from the alleged fraudulent misrepresentation.

While it may ultimately be decided that Defendants are liable under the guaranties, that issue is at this point unresolved. Therefore, the Court concludes that the allegations that Defendants were damaged by advancing funds to the Corporate Borrowers for the benefit of SunTrust due to the alleged false representation that SunTrust would reconsider funding of the loan agreements is a sufficient allegation of damages. Additionally, the forbearance agreement contains a blanket release by Defendants of all claims against SunTrust in connection with the loan agreements or related documents, which arguably includes the guaranties. SunTrust contends that the release contained in the forbearance agreement is a bar to the very counterclaims and defenses Defendants now seek to assert, and therefore the forbearance agreement has the potential to greatly impact Defendants' liability. Accordingly, the Court concludes that Defendants' fraud counterclaims are not futile for failure to sufficiently plead damages.

ii. Reasonable Reliance

SunTrust next contends that any reliance by Defendants on the alleged misrepresentation was not reasonable or justified because the forbearance agreement expressly provides that either party may unilaterally terminate discussions at any time for any reason. Defendants alleged, *inter alia*, that (1) "Plaintiff, after announcing its decision, falsely misrepresented that it would reconsider its decision," (2) "Defendants justifiably relied upon the false representation to their detriment," and (3) "Plaintiff procured the alleged execution of the 'forbearance agreements,' a payment of $300,000.00, an infusion of funds in excess of $1,000,000.00 into the Companies by Mr. Dowdy, and other things of value to Plaintiff." Defs.' Prop. Am. Answers & Counterclaims [DE-60-63].

10

Again, while SunTrust may ultimately prevail on its argument that the language in the forbearance agreement negates the reasonableness of Defendants' reliance, that is an argument on the merits and is not appropriate for the Court to consider at this time. The Court finds that the allegations related to reliance are not frivolous or legally deficient on their face and that the Defendants' fraud counterclaims are not futile for failure to sufficiently plead reliance.

### iii. Particularity

SunTrust finally contends that Defendants failed to plead fraud with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure. Specifically, SunTrust takes issue with Defendants' failure to allege detrimental reliance, to identify the time and place of the alleged meeting, or to identify the particular persons who made the alleged fraudulent statements. Defendants counter that the identifying information is contained in the forbearance agreement attached to SunTrust's answer to Defendants' counterclaims and that they did in fact allege detrimental reliance.

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The particularity requirement is a heightened standard in contrast to the Rule 8 general pleading requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). However, the Rule 8 concept of "notice pleading" is not negated by, but rather subsumed by, Rule 9(b). The Fourth Circuit has directed that, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*,

176 F.3d 776, 784 (4th Cir.1999).

Defendants alleged the following facts in support of their fraud claims: (1) "Plaintiff, after refusing to fund any advances, feigned an interest in re-considering Plaintiff's position," (2) "Plaintiff used this pretense to discourage and delay the Companies from seeking the protection of the Bankruptcy Court," (3) "Plaintiff scheduled a meeting to purportedly consider additional funding. Plaintiff's officer and employee threatened 'nuclear Armageddon' if the Dowdys and Cyruses did not execute the 'forbearance agreements' attached to Plaintiff's replies to the Defendants' counterclaims," (4) "Upon information and belief, Plaintiff had no intention of providing additional funding," (5) "Plaintiff determined, upon information and belief, that Plaintiff would not advance any more funds under any loan agreement," (6) "Plaintiff, after announcing its decision, falsely misrepresented that it would reconsider its decision," (7) The representation was a false representation of present intent which Plaintiff knew was false," (8) "Plaintiff intended Defendants to rely upon the false representation," (9) "Defendants justifiably relied upon the false representation to their detriment," (10) "Defendants have been damaged by their justified reliance upon Plaintiff's false representation," and (11) "Plaintiff procured the alleged execution of the "forbearance agreements," a payment of $300,000.00, an infusion of funds in excess of $1,000,000.00 into the Companies by Mr. Dowdy, and other things of value to Plaintiff." Defs.' Prop. Am. Answers & Counterclaims [DE-60-63].

The Court agrees with Defendants that SunTrust received adequate notice under Rule 9(b) of the circumstances of Defendants' fraud claim from the allegations in the proposed counterclaim read in light of the contents of the forbearance agreement, which SunTrust filed with its answers to Defendants' counterclaims. The forbearance agreement is a letter agreement drafted by SunTrust

12

and dated February 13, 2008. It was signed by Daniel B. Neuschaefer, Executive Vice President, on behalf of SunTrust, and by the Defendants as guarantors and on behalf of the Corporate Borrowers. The forbearance agreement states that the parties are "about to commence discussions concerning the obligations owed by [the Corporate Borrowers] to [SunTrust] which were personally guaranteed by [Defendants]" and that the parties "plan to discuss various courses of action which might be in our mutual best interest." Pl.'s Resp. Ex. A [DE-19]. The forbearance agreement includes a number of inducements to SunTrust to enter into these discussions, including a release of any claims against SunTrust related to the loan agreements, payments to SunTrust to bring all loans current, and additional security and guaranties for the existing loans. *Id.*

The Court concludes that these alleged facts, when read in light of the forbearance agreement, satisfy Rule 9(b)'s requirements, that SunTrust "has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial," and that Defendants have "substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784. Accordingly, the Court finds that Defendants' fraud claim is not futile for failure to plead with particularity.

In conclusion, the Court finds that Defendants' proposed amended fraud and misrepresentation counterclaims do not run afoul of *Twombly's* plausibility requirement and will allow Defendants' proposed amendment.

        d.      Unfair and Deceptive Trade Practices Counterclaim

SunTrust contends that Defendants' proposed amended counterclaims for unfair and deceptive trade practices, to the extent they are premised on the alleged misrepresentation that SunTrust would reconsider funding the loan agreements, fail for the same reasons Defendants' counterclaims for fraud fail. The Court has concluded that Defendants' fraud claims were not futile

13

and, consequently, adopts the same reasoning to allow amendment of the proposed unfair and deceptive trade practices claims.

SunTrust also contends that to the extent the proposed unfair and deceptive trade practices claims are premised on SunTrust's alleged decision to stop loaning additional funds to the Corporate Borrowers, they should be dismissed for failure to state a claim because the allegations are conclusory and have no factual support and are, at most, merely breach of contract claims.

N.C. Gen. Stat. § 75-1.1 declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1. In the case of *Wachovia Bank and Trust Co., N.A. v. Carrington Devel. Assoc.*, the court explained that "[a] trade practice is unfair if it offends established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and that "[a] trade practice is considered deceptive if it has the capacity or tendency to deceive." 459 S.E.2d 17, 21 (N.C. Ct. App. 1995) (citing *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981)). The court went on to conclude that "a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. 75-1.1." *Id.* (quoting *Branch Banking and Trust Co. v. Thompson*, 418 S.E.2d 694, 700 (1992)). In *Branch Banking and Trust Co. v. Thompson*, the North Carolina Court of Appeals stated, "We agree with the Fourth Circuit Court of Appeals which, in construing N.C.G.S. § 75-1.1, stated that 'a plaintiff must show substantial aggravating circumstances attending the breach to recover under the Act, which allows for treble damages.'" 418 S.E.2d at 700 (quoting *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir.1989)).

Defendants allege that the following actions by Plaintiffs violated § 75-1.1: (1) "Deciding to cease all funding to all companies of Mr. Dowdy and Mr. Cyrus in breach of the numerous loan

agreements, precipitously and without prior warning, when Plaintiff knew that such acts would destroy the Companies," (2) "[F]alse representation that it would reconsider its decision," (3) "Representation that it would bring 'nuclear Armageddon' upon Defendants if they did not sign the 'forbearance agreements'," and (4) "[S]olicitation of business, imploring Mr. Dowdy and Mr. Cyrus to make Plaintiff the principal lender for the Companies, when Plaintiff had, upon information and belief, decided to reduce its lending for development and construction and knew that Plaintiff intended to cease lending in an abrupt and precipitous action." Defs.' Prop. Am. Answers & Counterclaims [DE-60-63]. Defendants also allege the following additional facts in their proposed amended complaints to support the claims that the above actions violated § 75-1.1: (1) "Plaintiff did not honestly and fairly advise its customers, including the Companies, of its intent in time to allow an orderly transition of the loans to other lenders," (2) "Upon information and belief, this decision was made to further Plaintiff's interest and with callous indifference to its impact upon the borrowers including the Companies," (3) "At first, Plaintiff pretended to process requests for advances under existing agreements," but "After the initial delays in funding, Plaintiff precipitously refused to fund any advances under any agreements except the personal loan to Cyrus for the construction of his personal home," (4) "Plaintiff, after refusing to fund any advances, feigned an interest in re-considering Plaintiff's position," (5) "Plaintiff used this pretense to discourage and delay the Companies from seeking the protection of the Bankruptcy Court," (6) "Upon information and belief, Plaintiff had no intention of providing additional funding," and (7) "Plaintiff used a fraudulent misrepresentation of its present intention to reconsider funding the loans in order to procure an additional payment of $300,000.00, more or less, and to procure execution of the "forbearance agreements" by some of the Defendants and the Companies." Defs.' Prop. Am. Answers &

Counterclaims [DE-60-63].

Section 75-1.1 claims are frequently pleaded, but difficult to prevail upon, though the Court acknowledges that the cases relied upon by Plaintiff appear relevant on the merits. However, the inquiry at this stage is whether the allegations are frivolous or legally deficient on their face. The Court concludes that the allegations are sufficient to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and will allow amendment of the unfair and deceptive trade practices claim.

    e.    Counterclaims are Barred by Letter Agreement

Finally, Suntrust contends that "Defendants executed the Letter Agreement whereby they released SunTrust "from any claims, actions, causes of action, defenses, counterclaims or set offs of any kind or nature." Pl.'s Resp. Ex. A [DE-19]. The Defendants have alleged that the letter agreement was procured by fraud and misrepresentation and have sought rescission of that agreement. As the Court has determined that Defendants counterclaims for fraud and misrepresentation are not futile, the Court cannot conclude at this time that the counterclaims are barred by the letter agreement.

    f.    Equal Credit Opportunity Act Claims

Toni Dowdy and Starlette Cyrus claim that SunTrust violated the ECOA by requiring them, as spouses of Mary Dowdy and David Cyrus, to guaranty loans even though the applicant Corporate Borrowers independently qualified for credit. SunTrust, in its motion for judgment on the pleadings, sought dismissal of the ECOA claims. Pl.'s Mem. Supp. at 10-11 [DE-41]. Defendants sought to amend their ECOA claims, and SunTrust did not specifically address those proposed amended claims in its opposition to the motion to amend. Nevertheless, SunTrust did incorporate by reference

its arguments set forth in its motion for judgment on the pleadings in its motion to amend. Accordingly, the Court will consider whether amendment of the ECOA claims is futile.

SunTrust contends that "Defendants' ECOA claim consists of one conclusory statement: 'Plaintiff obtained any such guaranty in violation of the Equal Credit Opportunity Act.' (ECOA Counterclaim ¶ 2.) This short and vague allegation gives SunTrust no notice as to how it supposedly violated the ECOA and certainly does not make out a plausible claim for relief." Pl.'s Mem. Supp. at 10-11. SunTrust further contends that "[f]rom [Defendants'] conclusory allegation, it is unclear on which, if any, of [§ 1691(a) or Regulation B] grounds, Defendants' claims rest, or what conduct by SunTrust allegedly violated these grounds." *Id.*

The ECOA makes it unlawful "for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction— (1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract); (2) because all or part of the applicant's income derives from any public assistance program; or (3) because the applicant has in good faith exercised any right under this chapter." 15 U.S.C. § 1691(a). Regulation B provides that "[e]xcept as provided in this paragraph, a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested. A creditor shall not deem the submission of a joint financial statement or other evidence of jointly held assets as an application for joint credit." 12 C.F.R. 202.7(d)(1). "It is well-established that the ECOA, 15 U.S.C. § 1691 et seq., and its implementing regulations, 12 C.F.R. § 202.1 et seq., prohibit a creditor from requiring a spouse's signature on a note when the applicant individually qualifies for the requested credit." *Riggs Nat. Bank of Washington, D.C. v.*

*Linch*, 36 F.3d 370, 374 (4th Cir. 1994).

The proposed amended ECOA claims state as follows: (1) "Plaintiff's complaint involves approximately ninety-three (93) loans (according to Schedules A-E attached to the Complaint) to five (5) corporate borrowers, one (1) loan to Mr. Dowdy and Mr. Cyrus jointly as individual borrowers, and one (1) loan to Mr. Cyrus individually. Plaintiff alleges that Mrs. Dowdy and Mrs. Cyrus jointly with their husbands guarantied the ninety-three (93) loans to the corporate borrowers and the one (1) loan to Mr. Dowdy and Mr. Cyrus jointly as individual borrowers. Only the loan for $157,636.05 to Mr. Cyrus individually is not alleged to be subject to a guaranty agreement. The loans to the five (5) entities vary in principal amount from as much as $4,059,457.93 to as little as $6,818.89. Each and every one of the ninety-three (93) loans is alleged to be subject to the spouses' guaranty agreements; Defendants deny any liability under any alleged agreement;" (2) "If, as alleged, guaranties were obtained from the female Defendants, which is again denied, Plaintiff obtained any such guaranty in violation of the Equal Credit Opportunity Act, 15 U.S.C. 1691, and Regulation B issued pursuant to the act by the Federal Reserve Board;" (3) "Plaintiff was aware of its duties under the Equal Credit Opportunity Act, 15 U.S.C. §1691 and Regulation B;" (4) "Plaintiff made, upon information and belief, a corporate decision to ignore its duties under Regulation B;" (5) "To the contrary, Plaintiff decided, upon information and belief, to routinely demand guaranty agreements to be executed by spouses in direct violation of the Act as a matter of corporate policy;" (6) "Neither Starlette W. Cyrus nor Toni B. Dowdy was involved in any business of the Companies at the time any alleged guaranty is alleged to have been executed;" (7) "Neither Starlette W. Cyrus nor Toni B. Dowdy had any substantial assets in their name other than residences;" (8) "The guaranty of Starlette W. Cyrus would not have been material to the decision of any reasonable lender to extend

or deny credit for any alleged loan;" (9) "The guaranty of Toni B. Dowdy would not have been material to the decision of any reasonable lender to extend or deny credit for any alleged loan;" (10) "The various guaranty agreements from the wives were obtained, upon information and belief, out of a routine corporate practice of Plaintiff known to Plaintiff to be in direct violation to Regulation B issued pursuant to the Equal Credit Opportunity Act;" and (11) "Any guaranty agreement obtained by Plaintiff was obtained in violation of law and, upon information and belief, such was a knowing and conscious violation of law and was a routine corporate practice of Plaintiff." Defs.' Prop. Am. Answers & Counterclaims [DE-60 & 61].

The Court concludes that the proposed amended allegations provide SunTrust with sufficient notice of the ECOA claims, that they state a plausible right to relief, and that allowing amendment is not futile.

3. Conclusion

Having determined that the proposed amendments to Defendants' answers and counterclaims are not futile, Defendants' motion to amend [DE-50] is allowed.

B. <u>Motion for Judgement on the Pleadings</u>

Having granted Defendants' motion to amend their answers and counterclaims, the Court denies Plaintiff's motion for judgment on the pleadings [DE-40] as moot.

### III. CONCLUSION

Defendants' motion to amend [DE-50] is **GRANTED**, and Plaintiff's motion for judgment

on the pleadings [DE-40] is **DENIED** as moot.

This the 30th day of September, 2010.

／s／ David W. Daniel
DAVID W. DANIEL
United States Magistrate Judge